GISKAN SOLOTAROFF & ANDERSON LLP
217 Centre Street, 6th Floor
New York, New York 10013
(646) 964-9640
Jason L. Solotaroff
Aliaksandra Ramanenka
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
PATRICIA DEFILIPPIS,

                Plaintiff,

    -against-                                **COMPLAINT**

                                              **JURY TRIAL DEMANDED**

DEUTSCHE INVESTMENT
MANAGEMENT AMERICAS, INC.,

                Defendant.
------------------------------------------------------------------X

      Plaintiff Patricia DeFilippis, by her attorneys Giskan Solotaroff & Anderson LLP, for its complaint against Defendant Deutsche Investment Management Americas, Inc. ("DIMA"), alleges as follows:

### Nature of the Action

      1.    This is an action for discrimination on account of sex in the payment of wages pursuant to the Equal Pay Act of 1963, 29 U.S.C. 206(d) ("EPA") and the New York Labor Law § 194, and for age and sex discrimination pursuant to the New York City Human Rights Law, N.Y. City Adm. Code § 8-101 *et seq.* ("NYCHRL").

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over the claims made pursuant to EPA pursuant to 29 U.S.C. §216 and 28 U.S.C. §1331.

3.  This Court has jurisdiction over the claims made pursuant to the New York Labor Law and NYCHRL pursuant to 28 U.S.C. §1367.

4.  Alternatively, the Court has jurisdiction over the claims in this action pursuant to 28 U.S.C. §1331 as the parties are citizens of different states and the amount in controversy exceeds $75,000.

5.  This Court has personal jurisdiction over DIMA as it has its principal place of business at 345 Park Avenue, New York, NY 10154.

6.  Venue is properly before this Court pursuant to 28 U.S.C. §1391(a), as a substantial part of the events giving rise to the claim occurred in this District.

## THE PARTIES

7.  Plaintiff Patricia DeFilippis is a 54-year-old female who is domiciled at 36 Sherwood Ave, Englewood Cliffs, New Jersey 07632.

8.  Defendant DIMA is a corporation, duly organized and existing under and by virtue of the laws of the State of Delaware, with its principal executive offices located at 345 Park Avenue, New York, NY 10154. Defendant DIMA is a wholly owned subsidiary of Deutsche Bank Americas Holding Corporation, under Deutsche Bank, N.A. ("Bank"), located at 60 Wall Street, New York, NY 10006.

## THE FACTS

9.  Plaintiff is a 54-year-old female attorney and a former Director at DIMA.

10. Ms. DeFilippis has over 26 years of in-house experience specializing in corporate governance, compliance, Investment Company and advisory work. She graduated from Rutgers School of Law in 1990, and since then consistently worked as an in-house attorney for various financial services companies, such as The Dreyfus Corporation, Lord Abbett & Co. LLC, Prudential Real Estate Investors, Inc., and New York Life Investment Management, where Ms. DeFilippis was an Assistant General Counsel prior to joining DIMA.

11. Plaintiff started working at DIMA in June 2005 as an attorney in the legal department. In February 2012, due to her excellent performance, Ms. DeFilippis was promoted to a Director, responsible for building and managing the legal and compliance support division of Shared Business Services department of DIMA ("SBS"). Her duties included oversight and management of approximately twenty-five support staff, contract review and management, regulatory oversight, asset management, corporate governance, client on-boarding, guideline coding, regulatory and compliance filings and the management of large projects undertaken by DIMA. At one point, Ms. DeFilippis managed the largest number of support staff in SBS.

12. Ms. DeFilippis performed exceptionally well at DIMA. She consistently received very good performance reviews. Ms. DeFilippis' supervisor Kenneth Riva gave Ms. DeFilippis exceptional performance reviews and increased her bonus every year, even after the bank was affected by the financial crisis in 2008 and many employees' bonuses were eliminated. Mr. Riva also consistently increased Ms. DeFilippis's base salary, while salaries were flat for most employees. Ms. DeFilippis had never received a written warning or other discipline and had never been placed on a performance improvement plan.

13. In 2012, Ms. DeFilippis' salary was approximately $215,600. That year, Mr. Riva, told her that she was significantly underpaid (by approximately $50,000 in base salary per

year) in comparison to male Directors at DIMA, such as Olivier Poncet and Richard Mamone, both of whom were younger male Directors working for Mr. Riva in SBS. During the time Mr. Riva was Ms. DeFilippis' supervisor, each year he would indicate to Ms. DeFilippis the disparity between hers and her male counterparts' pay and specifically told her "to remind him each year prior to our annual salary review about this disparity in pay."

14. The responsibilities of Mr. Poncet and Mr. Mamone were substantially equal to the responsibilities of Ms. DeFilippis as these men, like Ms. DeFilippis, were Directors in SBS reporting to Mr. Riva and responsible for the build out of SBS and providing support for various functions within SBS. Ms. DeFilippis, however, was more experienced and educated than Mr. Poncet and Mr. Mamone and had greater responsibilities in overseeing the day to day functions of regulatory mandates for DIMA's investment advisors, corporate governance, guideline coding, and client onboarding groups, and was responsible for a larger number of subordinates at DIMA.

15. In September 2015, Paul Blodgett, a Director at DIMA, replaced Mr. Riva, a Managing Director, and became Ms. DeFilippis' new supervisor. Mr. Blodgett is approximately 43 years old.

16. Mr. Blodgett discriminated against Ms. DeFilippis based on her age and sex.

17. In October 2015, Mr. Blodgett eliminated most of Ms. DeFilippis' direct reports and most of her managerial responsibilities. Blodgett deliberately and systematically excluded Ms. DeFilippis from further involvement in any work-related activities related to future development. Three members of her staff were reassigned to report to Vikram Mehra, a male; ten members of the Boston regulatory reporting team were re-assigned to report to Brian Binder; two members of the Jacksonville regulatory filings and document management team were reassigned

to Christine Rosner, a younger female executive; five members of the onboarding team were reassigned to Blanton Neil; and five members of the guideline coding team were reassigned to a younger male transitioned from the Compliance Department.

18. Mr. Blodgett also failed to assign Ms. DeFilippis to projects and excluded her from work meetings and his regular Friday lunches with younger colleagues, such as Edward Flores and Kinjal Dalal.

19. It became clear to Ms. DeFilippis and other staff members who reported to Mr. Blodgett that Mr. Blodgett's daily interactions with his younger colleagues were far different than his interactions with his older female colleagues. Mr. Blodgett interacted with younger employees much more frequently than with the older female employees, including Vice Presidents Christine Moran and Lori Bryant-Chin, and Ms. DeFilippis. Ms. Moran told Ms. DeFilippis that "Mr. Blodgett preferred not to work with older women."

20. Mr. Blodgett routinely communicated with the younger employees, such as Mr. Flores and Ms. Dalal, at their desks and outside of his office, while meeting with older employees strictly in his office for scheduled meetings. Never once did he stop by the offices of Ms. DeFilippis, Ms. Moran or Ms. Bryant-Chin to discuss any matter.

21. On one occasion, when Ms. DeFilippis was out of the office for the day, Mr. Blodgett entered her office, sat in her chair, and noted to Spencer Engle – a younger male colleague at DIMA – that Ms. DeFilippis should clean up the documents she placed on the office floor following a recent move.

22. Mr. Blodgett also excluded Ms. DeFilippis from important projects that involved greater responsibility and exposure to senior level executives within DIMA.  These included:

a. The Delegation Database project -- which despite Ms. DeFilippis being told would be assigned to her was instead assigned to Todd Phillips, Ms. DeFilippis's younger colleague and member of her staff;

b. Secretary to DIMA's business committees -- Ms. DeFilippis was denied this opportunity even though she was qualified for it.  Instead, that assignment went to Allison Beattie, a member of Ms. DeFilippis' staff and Edward Flores, who were younger and less qualified than Ms. DeFilippis. Indeed, while Ms. DeFilippis is an attorney, Ms. Beattie is a paralegal;

c. Oversight of "DIMA Client List" -- Ms. DeFilippis initially had this responsibility and worked on finalizing procedures, which had not been updated since 2005 and worked diligently on improvements to the process, but Mr. Blodgett indicated that this project would be transferred to Ms. Beattie;

d. Bank Holding Company Project -- Mr. Blodgett denied Ms. DeFilippis the opportunity to participate in a high profile project to create a bank holding company, a project for which she was also eminently qualified as a result of her extensive experience in relevant corporate and regulatory matters.  Instead, that project was assigned to Mr. Flores, a younger less experience male co-worker.

e. ERISA Audit of DIMA Retirement Accounts -- Ms. DeFilippis was also denied the opportunity to be the project manager for this project. That project was assigned to Ms. Dalal.

f. The guideline coding group -- Ms. DeFilippis was initially responsible for managing this group, but Mr. Bloggett reassigned this responsibility to a younger male colleague.

6

23. Mr. Blodgett also unfairly gave Ms. DeFilippis a negative performance review. This was unwarranted because the issues Mr. Blodgett raised in the review were not dependent on Ms. DeFilippis' performance but rather on the non-performance of third-party contributors. Ms. DeFilippis was deliberately singled out with respect to tardiness on expense reimbursements and compliance training courses. However, Mr. Blodgett did not raise similar tardiness issues issues for the male members of his staff.

24. In addition, without providing any legitimate reason other than the most recent performance review, Mr. Blodgett reduced Ms. DeFilippis' bonus by approximately 46 % (from $26,500 in 2014 to $14,310 in 2015).  As a result of the reduction, Ms. DeFilippis' bonus was vastly reduced compared to other employees within Mr. Blodgett's division and lower than DIMA's bonus guidelines provided.

25. After the performance review and compensation meeting with Mr. Blodgett, Ms. DeFilippis requested a follow-up meeting to discuss any concerns Mr. Blodgett had with her work. This meeting never took place.

26. On April 18, 2016, DIMA's Human Resources representative told Ms. DeFilippis that her position was being eliminated, and her employment would be terminated.

27. Prior to Ms. DeFilippis' termination, she reached out to many very Senior Members of the Bank and DIMA and applied to several internal positions, including a Director position for the Bank's Vendor Risk Management U.S. Oversight team. Ms. DeFilippis was not offered any of these positions although she was qualified for them.

28. Defendant DIMA treated Ms. DeFilippis worse than male executives whose positions were eliminated.

29. For example, when Defendant DIMA eliminated the position of Richard Mamone, one of the younger employees who was paid more than Ms. DeFilippis, Defendant DIMA offered Mr. Mamone another position.

30. Similarly, when Defendant DIMA terminated Oliver Poncet, another younger male colleague of Ms. DeFilippis, Defendant DIMA provided him a three-month notice of termination, but did not provide such notice to Ms. DeFilippis.

**FIRST CLAIM FOR RELIEF**
(Sex Discrimination in Violation of EPA)

31. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs above as if fully set forth herein.

32. Defendant discriminated against Plaintiff on the basis of sex by paying her wages at a rate less than the rate at which it paid male employees for equal work on jobs, the performance of which required equal skill, effort, and responsibility.

**SECOND CLAIM FOR RELIEF**
(Sex Discrimination in Violation of the New York Labor Law §194)

33. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs above as if fully set forth herein.

34. Defendant discriminated against Plaintiff on the basis of sex by paying her wages at a rate less than the rate at which it paid male employees for equal work on jobs, the performance of which required equal skill, effort, and responsibility.

**THIRD CLAIM FOR RELIEF**
(Age Discrimination in Violation of NYCHRL)

35. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs above as if fully set forth herein.

36. Defendant discriminated against Plaintiff in the terms and conditions of her employment by terminating Plaintiff because of her age in violation of the NYCHRL.

## FOURTH CLAIM FOR RELIEF
(Sex Discrimination in Violation of NYCHRL)

37. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs above as if fully set forth herein.

38. Defendant discriminated against Plaintiff in the terms and conditions of her employment by underpaying and terminating Plaintiff because of her sex in violation of the NYCHRL.

## JURY DEMAND

Plaintiff demands trial by jury of all issues as of right by a jury.

**WHEREFORE**, Plaintiff demands judgment against Defendants:

A. Awarding Plaintiff injunctive relief in the form of an order requiring Defendants to reinstate Plaintiff to her former position and to refrain from discriminating and retaliating against her thereafter;

B. Awarding Plaintiff lost wages and compensatory damages including damages for emotional distress;

C. Awarding Plaintiff front pay;

D. Awarding Plaintiff liquidated damages under FLSA, 29 U.S.C. §216 and New York Labor Law, for EPA violations;

E. Awarding Plaintiff punitive damages;

F. Awarding reasonable attorneys' fees, costs, and expenses; and

Granting such other legal and equitable relief to the Plaintiff as the Court may deem just and equitable.

Dated:   New York, New York
         August 17, 2017

                        GISKAN, SOLOTAROFF & ANDERSON LLP

                        /s/
        By:   Jason L. Solotaroff
               jsolotaroff@gslawny.com
               (646) 964-9640
               Aliaksandra Ramanenka
               aramanenka@gslawny.com
               (646) 964-9609
               217 Centre Street, 6th Floor
               New York, New York 10013
               ATTORNEYS FOR PLAINTIFF